# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

## APRIL TERM, 1909

[No. 1801]

THE STATE OF NEVADA, EX REL. FRANK X. MUR-
PHY, RELATOR, *v.* THE COUNTY OF WHITE PINE,
IN THE STATE OF NEVADA, A. L. PARKER,
GEORGE F. PARKER, AND IRA J. McKNIGHT, AS
THE BOARD OF COUNTY COMMISSIONERS OF WHITE PINE
COUNTY, G. S. HOAG, WILLIAM McKNIGHT, AND
WILLIAM McKNIGHT AS THE COUNTY RECORDER AND
EX OFFICIO COUNTY AUDITOR OF THE SAID WHITE PINE
COUNTY, RESPONDENTS.

1. CERTIORARI—STATUTORY PROVISIONS.
    The board of county commissioners, in contracting for the index-
    ing of the records of the county recorder, did not exercise judicial
    functions, and as under Comp. Laws, 3531, *certiorari* will only lie to
    review the proceedings of an inferior tribunal, board, etc., exercising
    judicial functions, the writ would not lie to review its action.

2. CERTIORARI—STATUTORY PROVISIONS.
    Under Comp. Laws, 3531, *certiorari* will only lie to review the pro-
    ceedings of a board exercising judicial functions, and then only when
    there is no other plain and adequate remedy. *Held*, that, since section
    22 of an act to create a board of county commissioners, etc. (Stats.
    1864-65, p. 262, c. 80), as amended by Stats. 1893, p. 120, c. 116 (Comp.
    Laws, 2124), providing that when objections are filed to the allowance
    of a claim the board must discontinue the further consideration thereof
    for at least ten days, provided an adequate remedy, *certiorari* would
    not lie at the instance of a taxpayer to review the action of the board
    in entering into a contract for the indexing of certain county records.
    VOL. XXXI—8

ORIGINAL PROCEEDING. Application for *certiorari* by The State, on the relation of Frank X. Murphy, against the County of White Pine and others, to review the action of the board of county commissioners of said county in entering into a certain contract. **Dismissed.**

· The facts sufficiently appear in the opinion.

*Frank X. Murphy*, for Relator:

I. The debt created by this contract is not expressly authorized by law; and the board of county commissioners exceeded its jurisdiction in making the contract. Under the law, the county recorder is allowed "for each name to be indexed, fifty cents." (Comp. Laws, 2459.) No person, except the county recorder, is allowed any fee for such work. But under the contract G. S. Hoag is allowed ten cents for each name, of which sum the county recorder gets half.

II. The board of county commissioners exceeded its jurisdiction on September 5, 1908, in proceeding to consider the claims of the bidders on the contract, after written objections thereto, and on the same day, had been filed by the relator. They had no right at the time to consider even the written objections so filed. It was their duty to lay the matter on the table for at least ten days. (Comp. Laws, 2124; *State* v. *White Pine County*, 22 Nev. 80.) In the last-mentioned case (p. 88) this court held that the board of county commissioners had no jurisdiction over the subject-matter after objections were filed to the claim or demand of W. L. Davis, for the issuance to him of certain scrip, suit having been commenced by Hayes in the meantime.

· III. The board of county commissioners being a tribunal of special and limited jurisdiction only, its minutes must show affirmatively that the contract was let to the lowest responsible bidder. Their conclusion is not sufficient as against the written bid of G. H. Lindsey and H. B. Meloy, who were, surely and fairly, the best and lowest and most responsible bidders.

*Mitchell & Belford* and *J. M. Lockhart*, for Respondents:

· I. Conceding the rule to be well settled that boards of

county commissioners are of special and limited jurisdiction, and that they have no powers beyond those expressly granted by the legislature, we contend that the board had the authority to contract for the indexes by virtue of express statutory authority. "The board of county commissioners shall have power and jurisdiction in their respective counties. * * * Ninth—Lease or purchase any real or personal property necessary for the use of the county." (Comp. Laws, 2111.)

II.    The record before this court shows that the board found the fact to be that a new system of indexes "is a matter of great importance to the property owners and the public at large as well as the county." This, we take it, is a substantial finding that the indexes are necessary for the use of the county.

III.    Relator, without citing any authority, objects that the record as certified here does not set forth the evidence upon which the board found the facts set forth in its resolution. We have found several cases in which this court has held that the facts necessary to give the board jurisdiction in any proceeding must affirmatively appear upon its records, but in none of these cases do we find any ruling or intimation that any of the evidence leading up to the facts must or should be spread upon the minutes.

IV.    *Certiorari* is an extraordinary remedy, and courts should only use it when ordinary remedies do not apply. It should not issue when there is a plain, speedy, and adequate remedy by appeal. This proposition is of universal application, and needs no citations of authority to support it. The application does not state facts sufficient to justify the issuance of the writ. The writ will only issue when there has been an exercise of judicial functions. This court has repeatedly decided and held that the writ of *certiorari* will issue as against a board of county commissioners only when they exercise judicial functions. (*State* v. *Washoe County*, 23 Nev. 247; *Southern Dev. Co.* v. *Douglass*, 26 Nev. 60; *State* v. *Osburn*, 24 Nev. 187.)

By the Court, NORCROSS, C. J.:

This is an original proceeding in *certiorari* to review the action of the Board of County Commissioners of White Pine

County in entering into a certain contract with one G. S. Hoag, by the provisions of which the said Hoag was to make an index, or indexes, of the records of the office of the county recorder of said White Pine County.

The petition alleges the fact that on the 30th day of July, 1908, the said board of county commissioners adopted a resolution reciting, among other things, that "it is a matter of great importance to the property owners and the public at large, as well as the county, that a full, complete, plain, and simple system of indexing of said records be made at the expense of said County of White Pine," and, further, that it was the sense of said board that a contract be let for the making of such indexes, that notices be published calling for bids for the same, that the work performed under the contract be checked and approved by the then county recorder, that all bids for said work specify the amount for which the bidder will index said records, per name, per instrument, and that the work be completed not later than April 1, 1909.

This latter provision of the resolution was subsequently amended so as to require the completion of the work not later than the 4th day of January, 1909. The petition further alleges: That on the 5th day of September, 1908, in pursuance of said resolution and notice, bids were submitted to said board in effect as follows: Geo. H. Lindsey and H. B. Meloy offered to do the work at the rate of and for the price of eight cents per name, per instrument. G. S. Hoag offered to do the work at the rate of and for the price of ten cents per name, per instrument. That immediately prior to the opening of said bids, relator herein appeared before said board, as a resident and taxpayer of said county, and objected to and protested against the action of said board in reference to the giving of any such contract. That thereupon said board adjourned without taking further action in the matter. That thereafter, and on the same day, said board met again, pursuant to adjournment, and accepted the bid filed by the said G. S. Hoag and awarded the contract mentioned in said resolution and notice to him. That prior to the acceptance of said bid, and prior to the awarding of said contract, relator herein filed with said board written objections to the allow-

ance of said claim or contract. The petition further avers that there is no appeal from said action of the board, nor any plain, speedy, and adequate remedy; hence he invokes *certiorari* to annul the said action of said board upon the ground that it exceeded its jurisdiction in the premises, and that such excess of jurisdiction was in the exercise of judicial functions.

We think the motion to dismiss and quash the proceedings should prevail. Whether or not the board was acting in excess of its powers in entering into the contract in question, it is clear, we think, that such action was not in the exercise of judicial function. The writ of *certiorari* will only lie to review the proceedings of an inferior tribunal, board, or officer exercising judicial functions, and then only when there is no appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy. (Comp. Laws, 3531; *State* v. *Washoe County*, 23 Nev. 247; *Southern Dev. Company* v. *Douglass*, 26 Nev. 50; *Townsend* v. *Copeland*, 56 Cal. 612.)

The case of *State* v. *Commissioners of Washoe County, supra,* was an application by the state upon the relation of certain taxpayers of Washoe County to annul and set aside an order entered on the minutes of said board, employing the firm of Torreyson & Summerfield, attorneys, to assist the district attorney of Washoe County in certain tax litigation in which the county was interested, and agreeing to pay the said firm of attorneys therefor the sum of $1,000. Considering the question thus presented, this court said: "The first question that arises is upon the respondent's objection that in making the order the board did not exercise judicial functions. That it is only for the exercise of such functions that a writ of *certiorari* will lie is the plain reading of the statute (Gen. Stats. 1885, 3458), and has been so often decided both by this and nearly all other courts that there is now no question concerning it (*Esmeralda County* v. *Third District Court*, 18 Nev. 438; *In re Rourke*, 13 Nev. 253; *People* v. *Board of Education*, 54 Cal. 377; *People* v. *Bush*, 40 Cal. 345; *Spring Valley Company* v. *Bryant*, 52 Cal. 138; *People* v. *Park Commissioners*, 97 N. Y. 37; *People* v. *Walter*, 68 N. Y. 403; *People* v. *Supervisors*, 43 Barb. 234; *People* v. *Carr*, 23 N. Y. Supp. 112, and the numerous authorities cited in 4 Ency.

Pl. & Pr. 74, *et seq.*) The only question there ever can be is as to whether the board or other tribunal was, in the given instance, exercising judicial functions, or those that are ministerial, executive, or legislative."

After reviewing a number of authorities, the opinion continues: "We have found no cases where the contrary has been decided, although there are cases, both in this court and others, where the point was not made by the attorneys, nor noticed by the court when, had it been made, it would doubtless have been conclusive. *Sadler* v. *Eureka County*, 15 Nev. 39, comes under this head. Such cases are, of course, not decisions upon the question, it not being jurisdictional, and cut no figure in determining it; but should we overrule the objection now that it has been made, it would be, in effect, to decide that the courts, through the writ of *certiorari*, have a superintending control over the action of every officer in the state to the extent, at least, of determining whether they had authority to act, and of setting aside their action if they did not. It would be a larger task than was intended the courts should undertake."

See also *State* v. *Osburn*, 24 Nev. 187.

Counsel for respondents has raised a number of other objections to the proceeding in this cause by *certiorari*, one of which we deem advantageous also to consider, to wit, that relator has a plain, speedy, and adequate remedy under the statute. The only interest which relator has is that of a taxpayer in preventing the use of the public funds of the county for purposes not authorized by law. The statute specifically provides a remedy to prevent such action upon the part of the board of county commissioners. Section 22 of "An act to create a board of county commissioners in the several counties of this state and to define their duties and powers" (Stats. 1864–65, p. 262, c. 80), as amended by Stats. 1893, p. 120, c. 116 (Comp. Laws, 2124), provides: "Any person being a resident and taxpayer of the county may appear before and file with the board of county commissioners of the county wherein he resided written objections to the allowance of any claim or claims, demand or demands against the county. Such objections in writing shall properly describe the claims or demands

objected to, and the board of county commissioners shall file the same and embody such objections in the record of their proceedings, and lay such claims or demands on the table for a definite period of time, not less than ten days, at the expiration of which time they may proceed to consider the claims or demands so objected to, together with the objections, unless proceedings have been instituted in a court of competent jurisdiction to determine the validity of such claims or demands."

This court, in *State* v. *Commissioners of White Pine County*, 22 Nev. 80, 87, by Murphy, C. J., said: "Of the right of an individual taxpayer to commence and maintain an action to determine the legality or ownership of a claim or demand presented against the county, we do not entertain the remotest doubt. * * * Prior to the enactment of the statute of 1893, under and by virtue of section 1962, Gen. Stats. 1885, any taxpayer of the county might appear before the board of county commissioners and oppose the allowance of any claim or demand against the county; but the act did not stay the proceedings of the board. It might entertain the objections, or disregard them, as to it might seem fit. There was no appeal from its decision, and the taxpayer was without a remedy, except by filing a bill in equity and asking for a restraining order, which, in the majority of cases, on account of the absence of the judge from the county, could not be done until after the mischief complained of had been consummated. The act of 1893 was passed with a view to remedy the defect in the law, and, when objections are filed to the allowance of a claim or demand, the board must discontinue the further consideration of the claim or demand for· at least ten days. If at the end of ten days no suit has been commenced, the board may proceed and pass upon the claim or demand; but, if the suit has been commenced, the board is divested of all jurisdiction and cannot act until the final determination of the controversy by the court, for its duties are definitely prescribed by the act, and it cannot exceed the powers therein conferred upon it."

See also *Crampton* v. *Zabriskie*, 101 U. S. 609, 25 L. Ed. 1070; Dill. Mun. Corp. 914, *et seq.*, cited in the opinion.

The proceedings are dismissed.